**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Ralph FARESE,
Defendant-Appellant.**

No. 79–4043.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1980.

James J. Hogan, Joseph Mincberg, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GOLDBERG, RUBIN and POLITZ, Circuit Judges.

PER CURIAM:

Thomas Ralph Farese appeals from an order of the United States District Court for the Southern District of Florida, dated December 19, 1979, revoking his appearance bond and remanding him to custody. His bond was revoked for a violation of its territorial provisions, which restricted him to certain counties in Florida.[1] This violation occurred in mid-November, 1979 when Farese was found, arrested, and arraigned on federal narcotics charges in New York City. The government then moved that his bond be revoked. An evidentiary hearing was held on November 29, 1979 before a federal magistrate in the Southern District of Florida, who recommended that Farese's bond be revoked. The district court adopted the magistrate's findings and recommendation, and revoked Farese's bond without a hearing.

On this appeal, Farese raises two claims. He contends first that the district court abused its discretion in finding that Farese violated his bond willfully. Second, he argues that the factual basis for the government's motion was proved wholly by evidence obtained, directly and indirectly, by use of an illegal electronic surveillance order in New York State, and that the government did not comply with the notice requirement of 18 U.S.C. § 2518(9) before using such evidence in court.

We find Farese's first argument without merit. Viewing the evidence he presented before the magistrate most favorably to Farese, it demonstrates: Before leaving Florida for New York, Farese had visited the offices of his attorneys in order to apply for the court's written permission to travel to New York. On several previous occasions, such permission had been granted. This time, Farese was in a hurry to leave, and both of his attorneys were out of the office. Another attorney, who shared office space with Farese's attorneys, but who was apparently unfamiliar with the details of Farese's case, told Farese to go to New York and that he would "take care of it." The magistrate found that the attorney never did contact the court for approval.

In her recommendations, the magistrate correctly noted that it is the defendant, not his counsel or any other attorney, who is ultimately responsible for his acts. She also found that Farese was aware of the terms of his bond, knew that he was required to obtain written permission to travel in advance of travel, and exhibited "conscious and intentional negligent disre-

1. Farese had been arraigned on federal narcotics charges on August 24, 1978, and obtained release by posting corporate and personal surety bonds totalling $575,000. His trial has still not occurred, as the government has pursued an interlocutory appeal of the grant of a suppression motion, and the trial has been stayed pending resolution of that appeal.

gard for the conditions of his bond." These findings were adopted by the district court and are not clearly erroneous. Under these conditions, even if we assume Farese's subjective good faith in relying on the advice of an attorney and his prior experience in obtaining permission to travel, we cannot say that it was an abuse of discretion to revoke the bond. A defendant released on bond must deal honestly and uprightly with the courts.

However, we find that Farese must be granted an opportunity to demonstrate that the entire factual basis for the government's motion was tainted by illegal use of electronic surveillance. For a full understanding of Farese's claim, certain additional facts must be set forth here.

When Farese appeared before the magistrate on November 29, neither he nor his attorney had any knowledge of any electronic surveillance in New York. The government was apparently ready to prove that Farese had been in New York on November 16, and that he had been arrested and arraigned there. The government attorney obtained a stipulation from Farese's counsel that Farese had been in New York, obviating the need for any proof on this issue. The hearing proceeded, with Farese's state of mind at the time of his violation the only issue. After Farese had put on his evidence concerning willfulness, the government, in rebuttal on that issue, attempted to prove that Farese had also been in New York in mid-October, also without the court's permission. This was to be proved by introducing airline tickets to New York in Farese's name. Before introducing the tickets, the government attorney advised Farese's attorney that knowledge of the tickets "was derived from an eavesdropping order in which Mr. Farese was overheard." This was the first time either

Mr. Farese or his attorney became aware of the electronic surveillance. At this point Farese's attorney moved for a continuance so that he could challenge the eavesdropping order and its accompanying affidavits. The magistrate granted the continuance, but informed the attorneys that the district court might prefer to hear the testimony on these issues itself. The magistrate apparently later decided that the bond should be revoked on the basis of the November trip, and issued her report and recommendation to that effect. A hearing on the magistrate's report was scheduled for December 20, 1979, but on December 19 the district court, without a hearing, adopted the magistrate's report and recommendation and revoked the bond.

Farese alleges that the only factual basis for revocation of his bond, to wit, the government's knowledge of his presence in New York in November, was derived from the electronic surveillance. He further contends that since the government did not furnish him the prior notice of the surveillance required by 18 U.S.C. § 2518(9),[2] that subsection prohibits its use. Farese also challenges the legality of the electronic surveillance order, and asserts his right to an evidentiary hearing on this issue.

The government makes several contentions to the contrary. First, it argues that the stipulation of Farese's counsel is sufficient evidence to prove Farese's presence in New York, and it is untainted by any electronic surveillance. Apparently recognizing that the stipulation was offered by Farese's counsel only because he perceived no possible challenge to the government's proof, the government further contends that it was prepared to offer an eyewitness account of Farese's presence in New York as well as evidence of his arraignment there. The government states in its Response that it

---

2. 18 U.S.C.A. § 2518(9) (West Supp.1979) provides

> (9) The contents of any wire or oral communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished

> with a copy of the court order, and accompanying application; under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

"did not and does not consider such eyewitness testimony and a complaint of the U. S. Magistrate's Court of the Southern District of New York 'contents of any intercepted wire or oral communication or evidence derived therefrom' within the meaning of 18 U.S.C. § 2518(9)."

■ The government's *ex parte* determination that the evidence [3] was not "derived from" any electronic surveillance is not binding on Farese or a court. This must be determined at an adversary hearing. *Cf. Kolod v. United States*, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968) (per curiam) (relevancy of evidence obtained by electronic surveillance). The question is "whether 'the connection between the . . . conduct of the police and the discovery of the challenged evidence has become "so attenuated as to dissipate the taint." ' " *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978), *quoting Wong Sun v. United States*, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). *See United States v. Cruz*, 581 F.2d 535, 538 (5th Cir. 1978) (en banc).

By urging us to rule that a "stipulation in lieu of eyewitness testimony of the defendant's presence outside the area of his travel restrictions is too attenuated from [the] eavesdropping order to require litigation of the eavesdropping order," the government seemingly admits that whether evidence is derived from electronic surveillance is a matter for the court to decide. We do not have sufficient facts before us to make this determination. The question whether evidence is "derived from" electronic surveillance, or is so tenuously related to it so as to be free of any "taint," is not a pure question of law. Farese must be allowed a hearing on this question in the district court.

The government also contends that the exclusionary rule should not be applied at bail revocation proceedings. It asks us to ignore the plain language of 18 U.S.C. § 2515 [4] and create an exception for bail revocation proceedings. The government's argument is based on *United States v. Caron*, 474 F.2d 506 (5th Cir. 1973) and *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). *Caron* concerns the use of evidence obtained by wiretap for impeachment purposes. It relies on *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), a Supreme Court case decided prior to the passage of Section 2515, which held that the Fourth Amendment does not bar the use of illegally obtained evidence for impeachment purposes, and the legislative history of Section 2515. *Caron* holds that Section 2515 does not apply to evidence used solely for impeachment purposes. *Schipani* is a second circuit case which allows the use of some illegally obtained evidence in sentencing hearings. Although it was decided after the passage of Section 2515, that section is not mentioned by the court, and its decision is based solely on the Fourth Amendment.

The government contends that a statement in the legislative history of Section 2515 that there is no intention "generally to press the scope of the suppression role [sic] beyond present search and seizure," S.Rep.No. 1097, 90th Cong.2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2185, demonstrates that Congress intended all court-made exceptions to the exclusionary rule, including the *Schipani* exception, to survive the passage of Section 2515. The government fails to note in its

---

**3.** Neither party has briefed, nor has time permitted us adequately to research, the issue of whether Farese's physical presence on a New York street is "evidence" within the meaning of the statute. We express no opinion on that matter at this time. However, for the remainder of this opinion, we assume that it may have been "evidence" and that the district judge will so find.

**4.** 18 U.S.C.A. § 2515 (West 1970) states:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

Response that a citation of *Walder* appears immediately after the quoted language from the Senate report. Given the unmistakable language of Section 2515 ("*no* evidence" may be received in "*any* proceeding" before "*any* court" (emphasis added)), we conclude that Congress intended the *Walder* rule to apply to Section 2515, but did not intend to make an exception for sentencing hearings, bail revocation hearings, or any other proceeding in which evidence is being introduced affirmatively by the government. *See United States v. Manuszak*, 438 F.Supp. 613 (E.D.Pa.1977).[5] The Senate Report's citation of *Walder* buttresses our conclusion, since that case relies heavily on the difference between affirmative use of unlawfully obtained evidence to prove facts and the use of such evidence to contradict a defendant's untruths.

We therefore remand to the district court for an expedited hearing on the legality of the electronic surveillance and its nexus with the government's evidence. The mandate shall issue forthwith.

REMANDED.

---

**5.** We thus need not decide whether we would follow the Second Circuit's constitutional holding in *Schipani* or whether an exclusionary rule based on the constitution applies at bond revocation proceedings.