# ARMISTEAD WILLIAM WOOD *v.* STATE OF MARYLAND

[No. 153, September Term, 1980.]

*Decided June 30, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case prior to decision by the Court of Special Appeals to determine whether an illegally obtained tape recording is admissible in evidence for purposes of impeachment under Maryland Code (1974, 1980 Repl. Vol.), § 10-405 of the Courts and Judicial Proceedings Article, which provides:

> "Whenever any wire or oral communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle."

I

The pertinent facts are as follows: on April 17, 1980, the appellant Wood was observed surreptitiously entering an apartment leased by William Watkins. The police responded to a call from one of Watkins' neighbors and discovered Wood inside the apartment. Wood told the officers that a man known to him only as Tony had admitted him to the apartment to wait for a female companion. Wood was later arrested and charged with housebreaking.

At the trial, Watkins testified for the State that he had not given Wood or anyone other than his wife a key to his apartment and had not admitted Wood into the apartment. He testified that he did not know Wood or any one named Tony. Testifying on his own behalf, Wood said that his friend, Tony, had invited him to come to the apartment to buy marihuana. He said that when he arrived, Tony let him in but then left the apartment, giving him permission to remain until Tony returned. Wood testified that he knew very little about Tony and had not seen him since his arrest.

The trial judge recessed the court for the weekend before Wood's cross-examination was completed. Before trial resumed, Wood told his attorney that he possessed a tape recording of two conversations which he had with Watkins prior to trial. The conversations, according to Wood, were taped without Watkins' knowledge and revealed that Watkins had asked Wood for $750 in return for not testifying against him in court. When trial resumed, the trial court permitted Wood to testify with respect to Watkins' alleged $750 solicitation offer. When Wood's attorney attempted to question him about the existence of the tape recording, the trial court sustained the State's objection upon Wood's concession that the recording was inadmissible on direct examination under § 10-405. Watkins was then called as a rebuttal witness and refuted Wood's testimony. Wood thereafter sought to use the recording to impeach Watkins. The trial court sustained the State's objection and ruled that § 10-405 prevented the use of the tape recording for any purpose. Wood was convicted of housebreaking and appealed.

II

While acknowledging that the electronic recording of the disputed conversations with Watkins, to which the latter did not consent, violated § 10-402 of the Courts Article,[1] Wood maintains that the illegally obtained recording was nevertheless admissible as impeachment evidence under § 10-405. Notwithstanding the absence of an express exception in § 10-405 permitting the use of the illegal recording as impeachment evidence, Wood argues that the Legislature intended that an illegally intercepted communication could be used for impeachment purposes. In support of his argument, Wood points to the virtually identical federal counterpart of § 10-405, *i.e.,* 18 U.S.C. § 2515, and to *United States v. Caron,* 474 F.2d 506 (5th Cir. 1973), and other

---

1. It is unlawful under § 10-402 for any person to wilfully intercept a wire or oral communication by means of an electronic device where all parties to the communication do not consent to the interception.

cases,[2] holding that a communication illegally intercepted under § 2515 may nevertheless be admitted in evidence for impeachment purposes. The court in *Caron* noted that in *Walder v. United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954), and later in *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1966), the Supreme Court permitted evidence illegally obtained in violation of the fourth and fifth amendments to the federal constitution to be used to impeach a witness. *Id.* at 508-509. It then examined § 2515 in light of its legislative history and concluded therefrom that the Congress intended to permit communications illegally intercepted under that statute to be admitted in evidence for purposes of impeachment.[3]

---

**2.** *See* United States v. Farese, 611 F.2d 67, 70-71 (5th Cir. 1980); Jacks v. Duckworth, 486 F. Supp. 1366, 1368-1370 (N.D. Ind. 1980); United States v. Phillips, 479 F. Supp. 423, 438 (M.D. Fla. 1979); Jacks v. State, Ind., 394 N.E.2d 166, 169-171 (1979); People v. Brooks, 56 A.D.2d 634, 391 N.Y.S.2d 886, 887 (1977). *See also* People v. McGrath, 46 N.Y.2d 12, 385 N.E.2d 541, 547, 412 N.Y.S.2d 801 (1978), *cert. denied,* 440 U.S. 972, 99 S. Ct. 1535, 59 L. Ed. 2d 788 (1979).

**3.** The pertinent legislative history referred to in *Caron* is set forth in S. REP. NO. 1097, 90th Cong., 2nd Sess., *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 2112, 2184-2185 as follows:

"Section 2515 of the new chapter imposes an evidentiary sanction to compel compliance with the other prohibitions of the chapter. It provides that intercepted wire or oral communications or evidence derived therefrom may not be received in evidence in any proceeding before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State, where the disclosure of that information would be in violation of this chapter. The provision must, of course, be read in light of section 2518(10) (a) discussed below, which defines the class entitled to make a motion to suppress. It largely reflects existing law. It applies to suppress evidence directly (*Nardone v. United States,* 58 S. Ct. 275, 302 U.S. 379 (1937)) or indirectly obtained in violation of the chapter. (*Nardone v. United States,* 60 S. Ct. 266, 308 U.S. 338 (1939).) There is, however, no intention to change the attenuation rule. See *Nardone v. United States,* 127 F.2d 521 (2d), *certiorari denied,* 62 S. Ct. 1296, 316 U.S. 698 (1942); *Wong Sun v. United States,* 83 S. Ct. 407, 371 U.S. 471 (1963). Nor generally to press the scope of the suppression role beyond present search and seizure law. See *Walder v. United States,* 74 S. Ct. 354, 347 U.S. 62 (1954). But it does apply across the board in both Federal and State proceedings. Compare *Schwartz v. Texas,* 73 S. Ct. 232, 344 U.S. 199 (1952). And it is not limited to criminal proceedings. Such a suppression rule is necessary and proper to protect privacy. Compare *Adams v. Maryland,* 74 S. Ct. 442, 347 U.S. 179 (1954); *Mapp v. Ohio,* 81 S. Ct. 1684, 367 U.S. 643 (1961). The provision

Wood argues that because our Legislature was aware of the legislative history of § 2515 and its interpretation in *Caron* when it enacted § 10-405,[4] it intended that the same interpretation would be afforded to the Maryland statute. The Attorney General, although seeming to agree with Wood's basic premise, argues that the evidence was properly excluded as being otherwise inadmissible to impeach a witness at the surrebuttal stage of the trial.

### III

The Maryland Wiretapping and Electronic Surveillance Act is modeled upon the federal act, 18 U.S.C. §§ 2510-2520, and extensively tracks its provisions. *State v. Baldwin,* 289 Md. 635, 639, 426 A.2d 916 (1981); *State v. Bailey,* 289 Md. 143, 151-152, 422 A.2d 1021 (1980); *State v. Mayes,* 284 Md. 625, 628, 399 A.2d 597 (1979). The Maryland Legislature, however, has made some of the provisions of the State act more restrictive than the federal law. *See, e.g., State v. Baldwin, supra;* Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U. Balt. L. Rev. 183 (1979).[5]

The issue before us is whether the Maryland Legislature, in enacting § 10-405, intended to permit illegally obtained communications to be used to impeach the testimony of a witness. The statute declares that "no part of the contents of

---

thus forms an integral part of the system of limitations designed to protect privacy. Along with the criminal and civil remedies, it should serve to guarantee that the standards of the new chapter will sharply curtail the unlawful interception of wire and oral communications."

**4.** The Maryland Wiretapping and Electronic Surveillance Statute, of which § 10-405 is a part, was enacted in 1977 by ch. 692 of the Acts of 1977.

**5.** In this article, Chief Judge Gilbert of the Court of Special Appeals of Maryland compared each provision of the Maryland Act to its federal counterpart and concluded that

"[t]he act as written guarantees to the people of Maryland, insofar as the state, itself, is concerned, greater protection from surreptitious eavesdropping and wiretapping than that afforded the people by the Congress."

*Id.* at 220-221.

the communication [intercepted in violation of its provisions] and no evidence derived therefrom may be received in evidence in any trial . . . ." We cannot assume, in the face of these clear and unambiguous words, that notwithstanding their clear import the Legislature intended to adopt what *Caron* indicates was the intention of the Congress to permit communications illegally obtained under § 2515 to be utilized to impeach witnesses. Even if Congress so intended (although we do not find such an intent clearly expressed in the accompanying legislative history, *see* footnote 3, *supra*), we still must strive to ascertain the true intent of the General Assembly in enacting the statute. Absent some clear indication that the Legislature did not intend the all-encompassing exclusionary rule which it unequivocally fashioned in § 10-405 — and there is none — we conclude that the statute totally prohibits the use of illegally obtained communications as either substantive or impeachment evidence. To construe § 10-405 as Wood urges that we do (with the Attorney General's blessing) would be in essence to rewrite the statute by inserting a provision permitting illegally obtained communications to be utilized for the singular purpose of impeachment which, of course, we may not do. *See, e.g., Collier v. Connolley,* 285 Md. 123, 400 A.2d 1107 (1979).[6]

*Judgment affirmed, with costs.*

---

**6.** We note that the Supreme Court, in United States v. Havens, 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980), reaffirmed the viability of the holding in the *Walder* and *Harris* cases permitting evidence illegally seized in violation of the fourth and fifth amendments to be used as impeachment evidence. Our decision today, of course, turns solely on the interpretation to be given to the Maryland statute, as excluding *all* evidence illegally obtained in violation of § 10-402 from introduction at trial.