United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 12, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-50532
_____


UNITED STATES OF AMERICA

         Plaintiff - Appellee

    v.

ANGEL CHAVEZ

         Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Texas, Pecos
No. P-04-CR-15
_____

Before KING, Chief Judge, and DAVIS, Circuit Judge, and
FITZWATER,[*] District Judge.

PER CURIAM:[**]

    On March 24, 2004, a jury convicted Defendant-Appellant

Angel Chavez of drug trafficking under 21 U.S.C. §§ 841(a)(1),

952, and 960 and 18 U.S.C. § 2.  He now appeals his conviction

_____

    [*] District Judge of the Northern District of Texas, sitting
by designation.

    [**] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

and sentence, arguing that the district court (1) erred by admitting impermissible guilt-by-association evidence at trial, (2) erred by failing to give a limiting instruction concerning the guilt-by-association evidence, and (3) improperly instructed the jury on the defense of duress. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 17, 2004, Angel Chavez drove a truck containing marijuana from Ojinaga, Mexico into the United States. At a border checkpoint south of Marfa, Texas, U.S. Border Patrol Agent Richard Russell stopped Chavez and asked him about his citizenship. Chavez replied that he was a U.S. citizen and produced a Texas identification card and a birth certificate showing that he was born in the United States.[1] When Russell asked Chavez where he was going, Chavez responded that he was going to Marfa to pick up a friend, and then on to Odessa, Texas to see a doctor. Russell, finding it odd that Chavez would be visiting a doctor on a Saturday, continued questioning Chavez and noticed that Chavez appeared nervous.

In addition to questioning Chavez, Russell observed paper tags on the truck, indicating that the truck had recently been purchased. He testified that in his experience as a border

_____

[1] Chavez did not produce a driver's license. Russell testified that when he questioned Chavez about not having a driver's license, he noticed that Chavez "started to get nervous." 6 R. at 55-56.

2

patrol agent, narcotics traffickers use paper tags to distance themselves from knowledge of the contents of the vehicle. Russell also noticed fresh scratch marks and grease around the rim of the tire, which indicated that the tire had recently been removed and might contain narcotics. Based on these observations and Chavez's suspicious answers, Russell asked Chavez if he could search the truck. Chavez consented to the search.

Border patrol agents searched the tires and the contents of the truck and found thirty-nine taped bundles of marijuana hidden in the backseat of the truck. After receiving his Miranda rights and indicating that he understood his rights and was willing to talk, Chavez told Russell and other federal agents that he was transporting the marijuana for Sergio Aranda, an alleged leader of a powerful drug cartel in Ojinaga. According to Chavez, his father owed Aranda a debt that he could not repay, and Aranda had threatened to kill his father and other family members if he did not deliver marijuana from Ojinaga to Odessa.

While searching the truck, federal agents found papers in the truck with telephone numbers, some of which corresponded with numbers found in Chavez's wallet. One of the pieces of paper had a telephone number that matched the number of Rosabla Carrasco, an Odessa resident who had been arrested, but not convicted, for drug trafficking. Agents also found a current Odessa College student identification card picturing Chavez. The agent who investigated the identification card discovered that it was for a

3

membership to the athletic facility at the college, which Chavez shared with three other individuals.[2]

On February 5, 2004, a federal grand jury indicted Chavez for (1) knowingly importing into the United States from Mexico less than fifty kilograms of marijuana, and (2) knowingly possessing with intent to distribute less than fifty kilograms of marijuana. Chavez pleaded not guilty to both counts. Before the trial began, the government moved to introduce evidence that (1) Rodolfo Valdez, an Odessa resident who shared the college gym membership with Chavez, had twice been convicted of marijuana offenses, and (2) Carrasco, who was linked to Chavez through the papers with her telephone number found in Chavez's wallet and truck, had been arrested for marijuana smuggling. The district court denied the government's motion, finding the evidence irrelevant.[3] On March 23, 2004, the trial began and during its

---

[2] An Odessa College administrator testified that Chavez, Rodolfo Valdez, Eric Gomez, and Obed Hernandez opened a corporate athletic club membership named "Cuatro Los Chulos," meaning a group of cute guys. 6 R. at 175, 215. According to the testimony of Raymond Rodriguez, a police officer assigned to the drug enforcement administration task force, the address provided by the corporate members on the gym application corresponded to the private residence of Carrasco. When Rodriguez visited Carrasco's residence, she claimed that she did not know Chavez. Id. at 150-51.

[3] The judge ruled that:
[T]he government is not going to be allowed to bring [the evidence of Valdez's prior drug convictions and Carrasco's arrest for drug smuggling] up on its case in chief. . . . If Mr. Chavez takes the stand and raises the issue of duress, then the Government will be allowed to introduce that evidence. . . . I don't see anything, at

4

direct case, the government again moved to admit evidence of Valdez's prior convictions and Carrasco's arrest for drug trafficking. The court again denied the government's motion.

At the end of the government's case, Chavez took the stand in his own defense. Using the alleged death threats from Aranda as support, Chavez claimed that he acted under duress in transporting marijuana across the U.S. border. During Chavez's direct testimony, his attorney laid the groundwork for the duress defense. In an attempt to establish the second element of the duress defense,[4] Chavez and his attorney engaged in the following colloquy:

---

least in what the Government has shown me so far, that connects the Defendant with these two people in Odessa, other than he had a phone number, and nothing that connects him back to their prior drug dealings.
6 R. at 8-9.

[4] The defense of duress requires the defendant to prove by a preponderance of the evidence that:
1. The defendant was under an unlawful present, imminent, and impending threat of such a nature as to induce a well-grounded fear of death or serious bodily injury to himself [or to a family member]; and
2. The defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; and
3. The defendant had no reasonable legal alternative to violating the law, that is, he had no reasonable opportunity to avoid the threatened harm; and
4. A reasonable person would believe that by committing the criminal action he would directly avoid the threatened harm.
FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: Criminal § 1.36 (West 2001) (alteration in original); see also United States v. Posada-Rios, 158 F.3d 832, 873 (5th Cir. 1998) (setting forth the elements of this defense in essentially the same terms as the Fifth Circuit pattern jury instruction).

5

> Q: Did you recklessly or negligently hang around with the Sergio Aranda people and get yourself involved in this when you didn't have to?
>
> A: Do you mean if I -- I mean, I didn't understand your question.
>
> Q: Did you involve yourself, before this happened, with drug traffickers?
>
> A: No, ma'am.

On cross examination, the following exchange occurred between Chavez and the prosecutor:

> Q: Mr. Chavez, [defense counsel] just asked you, you do not associate with people who are drug traffickers. Is that your testimony?
>
> A: Yes, sir.

The prosecutor then questioned Chavez about his relationship with Valdez. Chavez testified that they were friends from work and that they had joined a gym as part of a group. Later during cross examination, the prosecutor once again asked:

> Q: And, again, you're very clear on the fact that you do not associate with people who are involved in drug trafficking; is that correct?
>
> A: Yes, sir.

For the third time, over the defense attorney's objections, the government moved to introduce evidence of Valdez's prior drug convictions and Carrasco's arrest for drug trafficking. This time, the district court admitted evidence of Valdez's prior drug-trafficking convictions, finding that (1) the prosecutor could use the evidence to rebut Chavez's duress defense, and (2) Chavez's attorney opened the door to the evidence by asking

6

Chavez whether he had ever associated with drug traffickers.  The

district court, however, refused to admit evidence concerning

Carrasco's prior arrest for drug trafficking.  After the district

court's ruling, the prosecutor asked Chavez whether he was aware

that Valdez had twice been convicted for trafficking marijuana.

Chavez responded that he "did not know--[he] knew he was in jail,

but [he] did not know why."  6 R. at 283.  After further probing

by the prosecutor about Valdez's prior marijuana offenses, Chavez

again responded, "I know [sic] he was in jail but not that he was

in there for all these problems that you are telling me about."

Id. at 284.  On rebuttal, the government presented the testimony

of Valdez's state and federal probation officers to introduce the

indictments and formal judgments of conviction for Valdez's drug-

trafficking offenses.

At the close of evidence, Chavez's attorney argued that the

Fifth Circuit pattern jury instruction on duress impermissibly

shifted the burden of proof to the defendant.  She submitted a

proposed jury instruction derived from the Federal Judicial

Center.[5]  She admitted, however, that she could point to no Fifth

_____

[5]  Defense counsel proposed that the court model its
instruction on duress after Instruction 56 of the Pattern
Criminal Jury Instructions promulgated by the Federal Judicial
Center.  Under this instruction,
> [o]n [the issue of duress], just as on all others, the
> burden is on the government to prove the defendant's
> guilt beyond a reasonable doubt.  To find Angel Chavez
> guilty, therefore, you must conclude beyond a reasonable
> doubt that when he participated in the attempt to smuggle
> the marijuana, he did not have a reasonable belief that

Circuit or Supreme Court case indicating that the Fifth Circuit pattern jury charge was erroneous. She also requested a cautionary instruction regarding evidence of Valdez's prior convictions. After asking defense counsel whether she had a proposed instruction and receiving a negative reply, the court denied defense counsel's request. Although the district judge did not specifically mention the evidence on Valdez, he did give a cautionary instruction to the jury to consider only the crimes charged to Chavez in the indictment.[6]

On March 24, 2004, the jury began its deliberations. After approximately two hours of deliberations, the jury sent a note to the court indicating that they could not reach a unanimous verdict on the duress defense. The court overruled Chavez's motion for a mistrial and instructed the jury to continue deliberating. About an hour later, the jury returned a guilty verdict on both counts. On May 26, 2004, the district court

---

such participation was the only way he could save himself
from serious harm.
1 R. at 69.

[6] The judge gave the following cautionary instruction to the jury:

You are here to decide whether the Government has proved beyond a reasonable doubt that the Defendant is guilty of the crimes charged in the indictment. The Defendant is not on trial for any act, conduct, or other offense not alleged in the indictment. Nor should you be concerned with the guilt of any other person or persons not on trial as a Defendant in this case, except as you are otherwise instructed.

7 R. at 339-40.

sentenced Chavez to thirty-three months imprisonment, three years supervised release, and special assessments of $200.00 on both counts.  On June 1, 2004, Chavez filed this timely appeal.

## II.  DISCUSSION

### A.  Admissibility of Valdez's Prior Drug-Trafficking Convictions

Chavez argues that the district court erred by admitting Valdez's prior drug convictions.  First, Chavez contends that this evidence was not relevant to any of the issues in the case and was offered only for the improper purpose of showing that Chavez associates with a felon.  According to Chavez, this court's precedent prohibits such guilt-by-association evidence, and the district court's admittance of such evidence constitutes reversible error.  See United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. 1981) (noting that the government may not attempt to prove a defendant's guilt by showing that the defendant associates with "unsavory characters").  Second, Chavez argues that his attorney did not open the door to Valdez's prior convictions because defense counsel's second question was directed at those drug traffickers who had threatened Chavez's family.  Even if defense counsel opened the door, Chavez maintains that Valdez's prior drug convictions were irrelevant because Chavez never accused Valdez of forcing him to transport drugs and no evidence exists to show that Chavez knew Valdez was a drug trafficker.  Finally, Chavez contends that even if

9

Valdez's prior drug convictions have some minor relevance to the issues in the case, the district court should have excluded the evidence as unduly prejudicial under FED. R. EVID. 403. See United States v. Polasek, 162 F.3d 878, 885 n.2 (5th Cir. 1998) (noting that even if the defendant's associates' convictions were relevant for some purpose, the prejudicial effect of the evidence substantially outweighed its probative value).

We review a district court's decision to admit evidence for abuse of discretion. United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002); see also United States v. Caldwell, 820 F.2d 1395, 1403 (5th Cir. 1987) ("[T]his court is guided by the principle that the district court has wide discretion in determining relevancy, and its decision will not be overturned absent a substantial abuse of that discretion."). For evidentiary issues arising under FED. R. EVID. 403, the district court has broad discretion to weigh the relevance, probative value, and prejudice of the evidence. United States v. Wilson, 355 F.3d 358, 361 (5th Cir. 2003). Based on the district court's broad discretion, we will not reverse a district court's ruling under Rule 403 absent a clear abuse of discretion. Caldwell, 820 F.2d at 1404; see also United States v. Dula, 989 F.2d 772, 778 (5th Cir. 1993) ("The balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge, a decision that is final in the absence of abuse of discretion.").

10

We note at the outset that by categorically denying on direct examination that he did not involve himself with drug traffickers, Chavez effectively opened the door to the questions that the prosecutor put to him concerning his connections with Valdez. See Walder v. United States, 347 U.S. 62, 64-66 (1954) (noting that where the defendant testified on direct examination that he had never possessed any narcotics, the government was allowed to impeach this broad assertion by introducing rebuttal witnesses); United States v. Caron, 474 F.2d 506, 508 (5th Cir. 1973). In United States v. Caron, the defendant denied that he was a bookmaker or engaged in bookmaking operations. Caron, 474 F.2d at 507-08. On cross-examination of the defendant, the district court allowed the introduction of evidence showing the defendant's dealings with another bookmaker though it was collateral to the issues raised by the indictment and for which the defendant was on trial. Id. at 508. On appeal, we held that the defendant opened the door to the prosecutor's rebuttal evidence by categorically denying on direct examination that he was a bookmaker. Id.; see also United States v. Walker, 613 F.2d 1349, 1352-53 (5th Cir. 1980) (holding that because the defense counsel had opened the door by asking a witness about her profession as a prostitute and eliciting testimony concerning the defendant's connection with the witness, the government was allowed on redirect to ask specific questions about whether the witness was working for the defendant as a prostitute and how

11

much money the witness paid to the defendant from her work as a prostitute, even though this testimony related to evidence of another crime by the defendant); United States v. Delk, 586 F.2d 513, 516 (5th Cir. 1978) ("[I]f the defendant opens the door to the line of testimony, he cannot successfully object to the prosecution accepting the challenge and attempting to rebut the proposition asserted . . . .") (internal quotation marks and citation omitted); cf. United States v. Ochoa, 609 F.2d 198, 204-05 (5th Cir. 1980) (finding that the defendant in this case "never testified that any of these people were good people or placed their character in issue" and contrasting this case with those in which "the defendant opened the door on direct and can now be required to give full details"). Although Chavez's counsel strenuously contended at oral argument that Valdez's prior drug convictions have no logical relevance to whether Chavez is guilty of drug trafficking, the evidence is relevant-- and admissible--to rebut Chavez's assertion that he did not associate with drug traffickers. See FED. R. EVID. 401 & 402 (noting in Rule 402 that all relevant evidence is admissible and defining relevant evidence in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (emphasis added).

Chavez has also failed to show that the district court clearly abused its discretion by admitting the evidence under

12

FED. R. EVID. 403.  To exclude evidence under Rule 403, the trial court must find that "the probative value of that evidence 'is <u>substantially</u> outweighed by the danger of unfair prejudice.'" <u>Caldwell</u>, 820 F.2d at 1404 (quoting FED. R. EVID. 403) (emphasis added).  Evidence of Valdez's prior convictions was extremely probative to rebut Chavez's testimony that he did not associate with drug traffickers.  While the evidence certainly carried some risk of prejudice by linking Chavez with a drug trafficker, the danger of unfair prejudice was reduced by the district court's cautionary instruction to the jury.  See <u>United States v. Sanders</u>, 343 F.3d 511, 518 (5th Cir. 2003) (noting that a court minimizes the danger of undue prejudice when it provides a cautionary instruction); <u>United States v. Gonzalez-Lira</u>, 936 F.2d 184, 192 (5th Cir. 1991) (determining that the trial court's limiting instruction to the jury reduced the risk of prejudice).  Accordingly, we cannot say that the district court's weighing of the probative value and prejudice of the evidence and decision to admit it amounted to a clear abuse of discretion.  See <u>Gonzalez-Lira</u>, 936 F.2d at 192.  Based on our review of the record, we hold that the district court did not err by admitting evidence of Valdez's prior convictions.[7]

**B.    Limiting Instruction on Valdez's Prior Convictions**

---

[7]  Because we hold that Chavez's attorney opened the door during direct testimony to Valdez's prior drug convictions, we need not decide whether the district court abused its discretion in admitting the evidence to rebut Chavez's duress defense.

Chavez next argues that the district court erred in not giving a limiting instruction telling the jury that Chavez's association with a convicted felon could not serve as proof of his guilt without additional evidence. See United States v. Parada-Talamantes, 32 F.3d 168, 170 (5th Cir. 1994) (finding that the admission of highly prejudicial evidence without any curative instruction amounts to reversible error). At oral argument, both parties focused on whether Chavez had waived his right to receive a limiting instruction by failing to provide the district court with a substantially correct jury instruction. In addition to this discussion over waiver, Chavez's counsel contended that the district court's failure to give the jury a limiting instruction added to the prejudice in this case.[8]

Contrary to the discussion at oral argument over waiver, appellate counsel on both sides failed to note that the district judge did provide a cautionary instruction to the jury to consider only the crimes charged to Chavez.[9] We have held that a district court's cautionary instruction mitigates potential prejudicial effect, even where the instruction is general and

_____

[8] At oral argument, Chavez's counsel paraphrased the trial attorney's request for a limiting instruction as "Your honor, can we have an instruction something like the mere presence instruction--you know, mere presence at a crime doesn't mean you're guilty. Can we have an instruction that without more, you can't convict him just 'cause he knows people who have been convicted of drugs?" The record indicates that Chavez's trial counsel made almost this exact request. See 7 R. at 329.

[9] See supra note 6.

14

does not specifically mention the prejudicial evidence at issue. See United States v. Walters, 351 F.3d 159, 167 n.5 (5th Cir. 2003) (noting that "[t]he fact that the district court's limiting instruction did not specifically mention [the evidence at issue] does not diminish its mitigation of prejudicial effect"); see also Gonzalez-Lira, 936 F.2d at 192 (determining that the limiting instruction sufficiently reduced the danger of prejudice). Because the district court did in fact provide a cautionary jury instruction, we find Chavez's contention without merit.

## C. The Fifth Circuit's Pattern Jury Instruction on Duress

Finally, Chavez argues that this circuit's pattern instruction on the defense of duress improperly places the burden of proof on the defendant to prove the four elements of the defense. According to Chavez, the instruction "saddled him with an unfair presumption that he recklessly or negligently placed himself in a situation that forced him to choose the criminal conduct in which he engaged." Appellant Br. at 15. Chavez acknowledges that this court's precedent forecloses this argument. See United States v. Willis, 38 F.3d 170, 178-79 (5th Cir. 1994). Chavez raises this argument, however, to preserve it for possible further review by this court en banc or by the Supreme Court.

The district court has broad discretion in formulating its

instructions, and we therefore review the district court's refusal to include the defendant's proposed jury instruction for abuse of discretion. United States v. Chaney, 964 F.2d 437, 444 (5th Cir. 1992). In applying this deferential standard of review, "we read the district court's instruction as a whole to determine whether that instruction fairly and accurately reflects the law and covers the issues presented in the case." Id.

In United States v. Willis, we found that the Fifth Circuit pattern jury instruction for duress accurately and fairly reflects the law of duress in this circuit. With regard to the same duress instruction now at issue, we held that "the duress instruction given by the district court herein was drawn directly from circuit precedent. . . . The district court was not free to ignore precedent . . . and neither are we." Willis, 38 F.3d at 179. Accordingly, as Chavez correctly recognizes, our precedent forecloses his jury instruction argument.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.