**Edward Dennis JACKS, Jr., Petitioner,**

v.

**Jack DUCKWORTH, Warden, Respondent.**

**No. S 79–308.**

United States District Court, N. D. Indiana, South Bend Division.

April 11, 1980.

---

Niles Stanton, Indianapolis, Ind., for petitioner.

Theodore L. Sendak, Atty. Gen., David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This Court now considers the petitioner's motion filed pursuant to 28 U.S.C. § 2254 requesting a writ of habeas corpus to issue. Petitioner, Edward Dennis Jacks, Jr., is a state prisoner who is presently incarcerated at the Indiana State Prison for his conviction for First Degree Murder. Petitioner was found guilty after a jury trial in November, 1976, and he received a sentence of life imprisonment. Petitioner took a direct appeal to the Supreme Court of Indiana raising several matters, including essentially the same issues presented in this petition. The Supreme Court of Indiana decided all issues adversely to petitioner and entered its findings and determination in its opinion cited in *Jacks v. State*, Ind., 394 N.E.2d 166 (1979). This Court has made a careful review of the state court record in this criminal case as mandated by *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). After careful consideration, and for the reasons stated below, this Court finds no merit in petitioner's contentions and therefore denies his application for a writ of habeas corpus.

▪ The petitioner in this cause has set forth five grounds for relief. In addressing the alleged grounds for habeas corpus relief, it should be observed that the record of the state court proceedings contains sufficient facts upon which the Indiana courts could properly resolve the matters under consideration. Indeed, the state record demonstrates that the petitioner was given a full, fair, and adequate opportunity to bring out all pertinent information and evidence at the trial level. Therefore, any relevant factual determinations of the Supreme Court of Indiana with respect to the present issues are entitled to deference by the Court and should be accepted in this proceeding. See 28 U.S.C. § 2254(d); *Swain v. Pressley*, 430 U.S. 372, 97 S.Ct.

1224, 51 L.Ed.2d 411 (1977); *United States ex rel. Clark v. Fike*, 538 F.2d 750 (7th Cir. 1976); *Tanner v. Vincent*, 541 F.2d 932 (2d Cir. 1976), cert. den., 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782; *United States ex rel. McNair v. State of New Jersey*, 492 F.2d 1307 (3d Cir. 1974). Petitioner's motion for an evidentiary hearing and oral argument is, therefore, respectfully denied.

### I.

Petitioner first contends that it was error for the state to use at trial a tape recording of an intercepted telephone conversation between himself and his mother. Petitioner maintains further that the telephone conversation was obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, and therefore its use at his trial was a denial of his rights rendering his conviction constitutionally infirm.

A review of the record shows the state prosecutor did use, for impeachment purposes only, a taped telephone conversation made August 28, 1975, between the petitioner and his mother. The call was placed from the Elkhart County Jail, where petitioner was being held pending formal charges in the murder of his wife, to the residence of his mother in Lake Forest, Illinois. There was no court order for the telephone tap and the state, at trial, readily admitted the evidence was gathered in violation of 18 U.S.C. § 2510 et seq. The state contended then, as it does now, it was only as rebuttal evidence that the tape recorded telephone call was used at trial, and, therefore, exclusion of the evidence is not mandated by the Fourth Amendment.

Petitioner maintains that the taped conversation cannot be used in any way at trial because the telephone line was not legally tapped and Title III of the Omnibus Crime Control Act of 1968 prohibits use at trial of such evidence. Petitioner argues, in the alternative, that even if such evidence could be introduced for the limited purpose of impeachment on rebuttal, the tapes should have been excluded in this case because the state's impeachment was a sham. Petition-

er argues the impeachment was mere pretense and subterfuge for introducing on rebuttal what could not have been introduced during the state's case in chief. Finally, petitioner contends the tape should have been excluded from trial, in any event, because a proper foundation was not established by the state for its introduction of the rebuttal evidence.

The threshold issue is whether evidence procured by means of a wiretap may be introduced by the government for impeachment purposes without a prior determination by the trial court that the wiretap was lawful. Although the prohibition against use of evidence gained by an illegal wiretap is broad in scope as one reads Title III of the Omnibus Crime Control Act of 1968, it has been found that the Act does not prevent the use of the evidence for impeachment purposes. *United States v. Caron*, 474 F.2d 506 (5th Cir. 1973). The court in *Caron* found that use of tape recordings, although illegally gathered, was permissible at trial for impeachment of the defendant who testified in his own behalf. In *Caron*, the defendant denied being engaged in any criminal bookmaking activity when questioned on direct examination by his defense counsel. Upon cross-exam, the defendant repeated the denial. It was at this time the government sought to introduce the tape recordings of the telephone conversation previously taped which impeached the defendant's testimony. The *Caron* court relied on *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) in finding that the use of the tape recordings, solely for impeachment purposes, was permissable. The Supreme Court of the United States in *Walder* found that although the government cannot make an affirmative use of evidence unlawfully obtained, the defendant would not be permitted to shield his guilt behind the exclusion of the evidence and perjured testimony. In *Walder*, the court allowed the use of illegally seized evidence to impeach the de-

fendant's direct examination assertion that he was innocent of any narcotics activities. The Fifth Circuit Court of Appeals applied the *Walder* rationale to the unique factual setting in *Caron* which dealt with wiretaps. The *Caron* court directly addressed the issue of whether the statutory exclusion of any evidence gathered in violation of Title III of the Omnibus Crime Control Act would prevent the use of evidence for impeachment. After an examination of the legislative history of the Act,[1] the *Caron* court found the exclusionary principle stated in the Act should not be construed as preventing the introduction of evidence to impeach a witness. *Caron, supra*, p. 509. The court further found the scope of the suppression role of the Act should parallel the present state of search and seizure law and thus, the Act would not be read to exclude the use of illegally gathered evidence for impeachment.[2]

Petitioner attempts to discredit any reliance on the *Caron* case distinguishing it upon the facts from his trial. Upon a scrutiny of the testimony from the record in petitioner's case, however, this Court finds the application of the reasoning in *Caron* to be singularly appropriate. It is obvious that neither the petitioner nor his mother, as witnesses at trial, answered all the questions concerning telephone calls candidly or truthfully. On direct examination by defense counsel, Helen Jacks stated she only spoke with her son on one occasion, August 27, 1975. (R. p. 644, 1. 25–27). On cross-examination, armed with a transcription of the August 28, 1975 telephone conversation, the prosecutor began his impeachment. It was only upon questioning by the prosecutor on cross-examination that Helen Jacks admitted to a telephone conversation on August 28. Likewise, upon direct examination, the petitioner testified he only spoke with his father on August 28, 1975 and no one else. (R. p. 688, 1. 11–17). Once again, it was only upon cross-examination, when

1. S.Rep.No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2184–85.

2. *But cf., United States v. Manuszak*, 438 F.Supp. 613 (E.D.Pa. 1977) (court refused to extend the *Caron* rationale to a probation revocation hearing where government sought to use illegally gathered evidence for other than impeachment purposes). *See also, Volpicelli v. Salamack*, 447 F.Supp. 652 (S.D.N.Y. 1978).

confronted with questions concerning the taped telephone conversation, did the petitioner vaguely recall a telephone conversation with his mother.

 Finding their answers to be less than truthful, it is settled law that the prosecution could use even unlawfully gathered evidence to impeach the witnesses. *Orgeon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder, supra; Caron, supra.* The scope of the law in this area is stated definitively in *Harris, supra.* There the court held that statements gathered in violation of a defendant's rights as outlined in *Miranda* could be used solely for impeachment purposes at trial. The *Harris* court held the impeachment process provided a valuable aid to the jury in assessing the credibility of the defendant. Although a defendant is privileged to testify in his own behalf, that privilege cannot be construed to include a right to commit perjury. *Harris,* 401 U.S. at 226, 91 S.Ct. at 645. When faced with perjured testimony, the state could resort to the use of unlawfully gathered evidence as rebuttal.

This Court is not swayed by petitioner's argument that the impeachment of petitioner and his mother was a sham. Petitioner alleges that because both he and his mother referred only to telephone conversations on August 27, 1975, in their answers on direct examination, then cross-examination on conversations occurring on August 28, 1975, were beyond the scope of direct. Petitioner contends, therefore, that *Harris, Caron* and *Walder* are distinguishable because in those cases the testimony sought to be impeached was brought out on direct examination. Petitioner misreads the scope of examination of the witness and himself. The door was opened, upon direct examination, concerning telephone conversations between the petitioner and his parents. When both petitioner and his mother incorrectly stated they had no conversation with each other on August 28, 1975, that testimony was subject to impeachment upon cross-examination. *United States v. Tweed,* 503

F.2d 1127 (7th Cir. 1974) (court admitted tainted evidence); *United States v. Mariani,* 539 F.2d 915 (2d Cir. 1976) (defendant tainted evidence after defendant on direct examination testified inconsistently with may not be impeached by illegally obtained evidence unless he opens door on direct examination). Faced with the obvious discrepancy of the witness' testimony and the taped conversation, the prosecutor was well within the bounds of *Harris* and *Caron* to challenge the testimony of the petitioner and his mother concerning the telephone calls. This Court finds no error in the use of the taped telephone conversation for impeachment purposes.

 Petitioner's contention that the tape of the telephone conversation was inadmissible because of the state's failure to lay a proper foundation is without merit. The question of admissibility of certain kinds of evidence is a question of state law. A review of the record [3] shows the state laid a foundation for the admission of the tape. The trial court overruled the defense objections to admissibility based upon improper foundation. No constitutional error is apparent from a reading of the record. The discretion of the state court judge will not be questioned in this motion and the finding of admissibility will not be disturbed.

## II.

 Petitioner next contends the admission at trial of portions of tape recording of a conversation between himself and a police officer, Miller, was in violation of his due process rights guaranteed by the Fourteenth Amendment. The conversation occurred at the police station on the night petitioner was arrested. The tape recording was made by the interviewing officer and it was played to jury after being admitted into evidence at trial. This tape revealed a conversation between the officer and petitioner in which the officer advised petitioner of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 486, 86 S.Ct. 1602, 1634, 16 L.Ed.2d 694 (1966). These rights were acknowledged by

3. R. pp. 840–842.

the petitioner and the conversation then continued as to the events of the evening. The subject matter of the conversation included the petitioner's employment, his wife's occupation and the fact that he was a licensed gun dealer. Petitioner also discussed the fact that his parents were coming from Illinois to join him in Indiana. After further discussion, the petitioner stated to the police officer: "As regards what happened this evening, I want to talk to my attorney." The police officer agreed, and the conversation ended. Petitioner objects to this last portion of the tape being played to the jury.

Prior to trial, a hearing was held on the petitioner's motion to suppress the tape recording of the conversation.[4] At trial, after further argument,[5] the court granted in part the motion to suppress and directed that no portion of the tape beyond the declaration by the defendant that he wished to speak to his attorney be played.[6] Petitioner now contends the portion that was played violated his right to remain silent in that it was prejudicial for the jury to hear him invoke the rights to an attorney and to remain silent. Petitioner relies on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held it violated the due process clause of the Fourteenth Amendment for the prosecution to use an accused's post-arrest silence for impeachment purposes.

Petitioner's reliance upon *Doyle* is misplaced. That case dealt with a situation where the failure of defendant to respond to the accusations was exploited by the prosecution to impeach the defendant's trial testimony. In this case, however, much more was said than the mere invocation of silence or request for an attorney. Petitioner carried on an extended conversation with the police officer. He was fully aware of his rights under *Miranda v. Arizona, supra*. He chose to carry on a conversation with the officer for some time before requesting to remain silent and to speak with an attorney. No portion of the tape was introduced as evidence once the petitioner

stated his request. The statement is a logical conclusion of the conversation. Not to include the request may have caused confusion for the jury. Having scrupulously afforded petitioner his *Miranda* rights, the state did not violate them by offering the portion of the tape recording made previous to petitioner's request for an attorney. No prejudice is found.

### III.

■ Petitioner next argues the state failed to prove beyond a reasonable doubt that the defendant was legally sane at the time of the commission of the offense. After a complete review of the record in petitioner's case, this Court finds, that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the petitioner was sane, at the time of the offense, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### IV.

As to petitioner's fourth ground concerning the giving of court's instruction No. 13 to the jury, the Supreme Court of Indiana held as follows:

"Court's instruction number thirteen, which dealt with criminal intent, was not objected to by the defendant at the time it was given. He first raised objection to it in his motion to correct errors. Since he did not object at the time the instruction was given, any error is waived and we will not consider it. *Murphy v. State* [(1977) Ind., 369 N.E.2d 411], *supra; Bell v. State,* (1977) Ind., 366 N.E.2d 1156, 1160" *Id.*, at 173.

■ The legal determination of the Supreme Court of Indiana on appeal that in light of Indiana law the petitioner waived the alleged instruction No. 13 issue is binding on this Court and precludes consideration of the issue in the present habeas corpus review (even if the petitioner's claim

---

4. R. pp. 342–359.

5. R. pp. 549–554.

6. R. pp. 554–555.

has constitutional implications) absent a showing of cause by the petitioner for his failure to make a timely objection and actual prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978); *United States ex rel. Maxey v. Morris*, 591 F.2d 386 (7th Cir. 1979). *Blenski v. LaFollette, supra*, is especially pertinent to this discussion as the court in that case considered the situation where a defendant fails to object to a jury instruction. In discussing the matter, the court in *Blenski* stated in part, as follows:

"The issue of reviewability of a federal claim which the state declined to pass upon was considered by the Court in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Sykes* the federal claim of admission of inculpatory statements obtained in violation of rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had not been resolved on the merits in the state proceeding because the claim had not been presented in the manner prescribed by state procedural rules: no contemporaneous objection had been made. The Court noted that many interests are served by a contemporaneous objection rule, 433 U.S. at 88–89, 97 S.Ct. 2497 [at 2507] and stated that ' [a]ny procedural rule which encourages the result that [a criminal trial] be as free of error as possible is thoroughly desirable . . .' *Id.*, at 90, 97 S.Ct. at 2508. The Court therefore held that absent a showing of 'cause' and 'prejudice' attendant to the failure to make timely objection, federal habeas review is unavailable.

We find the reasoning of *Sykes* equally persuasive in a federal habeas challenge to jury instructions which were not objected to in a timely manner. A decision on the issue of the constitutionality of jury instructions also should have the benefit of full consideration at the trial court level. Wisconsin law is clear: The failure to make timely objection to jury instructions constitutes a waiver of any

alleged defects in those instructions. *State v. Davis*, 66 Wis.2d 636, 225 N.W.2d 505 (1975). Thus, unless a petitioner established 'cause' for his failure to object timely and that he was 'actually prejudiced' by use of the instruction, he is not entitled to habeas relief." *Id.*, 581 F.2d at 129–130.

Since the petitioner has never shown the requisite cause and actual prejudice, the petitioner's present claim is not an appropriate subject for federal habeas corpus, and accordingly, petitioner's fourth ground as a basis for habeas corpus relief is DENIED.

## V.

Petitioner's final ground concerns the fact that state's instructions Nos. 4 and 5 were given to the jury over defense objection. Petitioner claims that these instructions ". . . permitted the jury to presume that the defendant was (1) sane at the time of the alleged offense, and (2) that he possessed the requisite criminal intent at the time of the offense in violation of his constitutional rights. However, it is clear that Jacks was not denied any constitutional rights as a result of the giving of state's instructions Nos. 4 and 5. These instructions are set out in *Jacks v. State*, Ind., 394 N.E.2d 166, 174 (1979).[7]

Questions concerning instructions are normally matters of state law and are not cognizable in federal habeas corpus. *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976); *Manning v. Rose*, 507 F.2d 889 (6th Cir. 1974). Only where the giving of an instruction is so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie. 28 U.S.C. § 2254(a); *Henderson v. Kibbe, supra*; *United States ex rel. Smith v. Fogel*, 403 F.Supp. 104 (N.D.Ill. 1975). In *Henderson v. Kibbe, supra*, the Supreme Court of the United States made the following relevant observations:

---

7. R. pp. 273–274.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process,' *Cupp v. Naughton,* 414 U.S., at [141,] 147, 94 S.Ct., at [396,] 400, 38 L.Ed.2d 368; not merely whether 'the instruction is undesirable, erroneous or even "universally condemned," ' *Id.,* at 146, 94 S.Ct., at 400." Id., 97 S.Ct. at 1736–1737.

In this case, the giving of state's instructions Nos. 4 and 5 was not a violation of a fundamentally fair trial. Regarding state's instruction No. 4, the Supreme Court of Indiana determined that, although the instruction was unnecessary, it was ". . . a reasonable explanation in view of all the other instructions, including court's instruction number twenty-two, and was to be considered by the jury in conjunction with all other instructions." *Jacks v. State, supra,* at 174. It is, of course, axiomatic that instructions must be viewed as a whole. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The court had previously found that instruction No. 22 was a correct statement of the law concerning the sanity issue. *Id.,* at 173–174. Accordingly, the court found no error in the giving of the instruction. *Id.,* at 174. Moreover, an examination of the instruction reveals that it did not require the jury to presume anything regarding petitioner's insanity defense or his intent.

Similarly, state's instruction No. 5, read as a whole, did not require or mandate the jury to presume anything with respect to "intent" and therefore, was not violative of principles enunciated in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Jacks v. State, supra,* at 175. In its opinion, the Supreme Court of Indiana properly distinguished the instruction in the petitioner's case from the mandatory one in *Sandstrom,* as follows:

"Further, however, it would appear the instruction given in this case does not have either the conclusive or burden-shifting effect the Court found repugnant in the *Sandstrom* case. 'Sandstrom's jurors were told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." They were not told they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory.' 442 U.S. at 515, 99 S.Ct. at 2454. In the present case the trial court did make the statement found in *Sandstrom.* However, the court qualified it by stating that the jurors were to look to all of the surrounding circumstances, including what was said and done in relation to the acts, and that everyone is presumed to intend the natural consequences of his voluntary acts *unless* the circumstances are such as to indicate the absence of such intent. The second paragraph of State's instruction number five says that '[w]hen an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State *in the absence of justifying or excusing facts. . . .'* Record at 274 (emphasis added). Therefore, we do not feel that this instruction was as limited and mandatory in effect as the United States Supreme Court found the instruction in *Sandstrom* to be. We find no error as to this issue." *Id.,* at 175.

Therefore, it is apparent that petitioner's claims concerning state's instructions Nos. 4 and 5 present no grounds for relief.

The petitioner is denied any habeas corpus relief under 28 U.S.C. § 2254 and this case is DISMISSED.