THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James Randall Smith,       
Respondent,
 
 
 

v.

 
 
 
Karen P. Smith,       
Appellant.
 
 
 

Appeal From Georgetown County
H. E. Bonnoitt, Jr., Family Court Judge

Unpublished Opinion No. 2004-UP-547
Submitted October 1, 2004  Filed October 
 27, 2004

AFFIRMED

 
 
 
Margaret D. Fabri, of Charleston, for Appellant.
Robert Wade Maring, of Georgetown, for Respondent.
 
 
 

PER CURIAM: Karen P. Smith (the mother) 
 appeals the order of the family court finding her in contempt for withholding 
 the parties children from a scheduled visitation with James R. Smith (the father).  
 We affirm. [1] 
FACTS
The parties were divorced on October 31, 2002.  
 Pursuant to the terms of the decree, the mother was granted custody of the parties 
 two daughters with liberal visitation to the father.  The girls exercised visitation 
 with their father without incident until July of 2003.  
After the girls returned from visitation with the 
 father from June 20, 2003 to July 4, 2003, the mother discovered the older daughter 
 had a bald spot at the top of her head caused by her pulling her own hair out.  
 The mother called the father that night, July 7, 2003, and they discussed the 
 situation.  The younger girl had told the father about the older daughters 
 actions during their visitation with him.  According to the mother, the father 
 told her that he wasnt too concerned about it because he himself had developed 
 obsessive-type habits when he was a child.  The father, however, testified that 
 he planned on asking Patricia Carter, the girls therapist about the condition 
 when they met for a scheduled family counseling session on Thursday, July 10, 
 2003.  On that Thursday, the mother instead took the girls to an appointment 
 with Michael Kollar, Ed.D., a licensed clinical psychologist that the girls 
 had been seeing for individual counseling, who made the diagnosis of trichotillomania. [2]   Without first calling the father, the mother cancelled the 
 family counseling session that was scheduled for that evening.  Later that evening, 
 the father called the mothers house and spoke to the older daughter.  The mother 
 testified that after the call, the older daughter began crying and pulling out 
 her hair for much of the night, saying she didnt want to go to visitation with 
 her father.  
The following day the mother left a note in the 
 fathers mailbox stating that she was refusing to produce the children for the 
 visitation that was to start that day, July 11, 2003, and to end on July 25, 
 2003.  The father attempted to pick up the children that evening with the assistance 
 of a sheriffs deputy.  Although the older daughter was home, the younger daughter 
 was at a friends house.  The father left without either girl.  As the mother 
 knew, the father had planned to take the children on a vacation to the Bahamas 
 during this visitation period.  The trip was to commence on July 15.  As a result 
 of not being able to start his visitation with the girls, the father had to 
 buy replacement airline tickets and also had to pay another veterinarian who 
 had contracted with him to cover for him at work during the vacation days missed.  

The father filed an Emergency Rule to Show Cause 
 on July 14, 2003.  The mothers attorney accepted service on her behalf by fax 
 on the same date.  Although the mother was never personally served, she appeared 
 at the hearing and agreed to go forward on the Rule.  
At the hearing, the mother introduced evidence 
 in the form of an affidavit prepared by Dr. Kollar advising that the older daughter 
 had begun suffering from trichotillomania.  In the affidavit, Dr. Kollar recommended 
 that the older daughter be evaluated by a pediatrician and also advised that 
 the mother should not physically forc[e] the daughters to visit the father 
 if they did not want to go.  
After hearing all the evidence, the trial judge found 
 that the mother had improperly denied visitation to the father and was in willful 
 contempt.  The judge stated that the mother had either manipulated [the] children 
 or allow[ed] them to manipulate her.  The court ordered the mother to be incarcerated 
 for a period of 60 days and to pay a fine of $1500.00.  However, the court allowed 
 the mother to purge these sanctions in the following manner: (1) by delivering 
 the children to the father for visitation on the following day; (2) by paying 
 $2,039.00 to the father for the cost of the replacement airline tickets; (3) 
 by paying $1050.00 to the father for the substitute veterinarian to cover his 
 practice during the time he would have been on the vacation; and (4) by paying 
 a $750 fine to the Georgetown County Clerk of Court.  Additionally, the mother 
 was ordered to pay attorney fees and costs in the amount of $2126.70.
This appeal followed.    
STANDARD OF REVIEW
A finding of contempt rests within the family courts 
 sound discretion.  Haselden v. Haselden, 347 S.C. 48, 63, 552 S.E.2d 
 329, 337 (Ct. App. 2001).  This court will reverse the family courts determination 
 regarding contempt only if it is without evidentiary support or is an abuse 
 of discretion.  Id. 
LAW/ANALYSIS
I. Finding of Willful Contempt
The mother first argues that the family 
 court erred in finding her in willful contempt for withholding visitation.  
 We disagree.
A party may be found in contempt of court for willfully 
 violating, neglecting, or refusing to obey or perform a lawful court order.  
 S.C. Code Ann. § 20-7-1350 (Supp. 2003).  An act is willful if it is done voluntarily 
 and intentionally with the specific intent to do something the law forbids, 
 or with the specific intent to fail to do something the law requires to be done; 
 that is to say, with bad purpose either to disobey or disregard the law. Spartanburg 
 County Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 
 874 (1988).  Before a court may find a person in contempt, the record must 
 clearly and specifically reflect the contemptuous conduct.  Henderson v. 
 Henderson, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1994).  To show contempt 
 for violation of a court order, the moving party must prove the existence of 
 a court order and the facts establishing the respondents noncompliance with 
 the order.  Eaddy v. Oliver, 345 S.C. 39, 42, 545 S.E.2d 830, 832 (Ct. 
 App. 2001).  Once a prima facie showing has been made, the burden shifts to 
 the respondent to establish his defense and inability to comply.  Id.  

The mother does not dispute the existence of the 
 court order or her noncompliance with the order.  Instead, she argues that the 
 family court failed to give proper weight to the evidence establishing her defense.  

The mother relies on Nash v. Byrd, 298 S.C. 
 530, 381 S.E.2d 913 (Ct. App. 1989), for the proposition that unilateral withholding 
 of visitation in violation of a court order does not constitute contempt of 
 court where a child is suffering from the ill effects of the conduct of the 
 opposing parent.  In Nash, this court found that the father had engaged 
 in a course of conduct calculated to harass the mother and gain information 
 to support a change of custody.  Id. at 532, 381 S.E.2d at 914.  The 
 father and his family stalked the mother, made derogatory remarks toward or 
 about her in front of the child, and encouraged the child to make false allegations 
 of abuse and neglect against the mother.  The child developed gastrointestinal 
 problems as a result of anxiety caused by the fathers actions.  He eventually 
 refused to go with his father for scheduled visitation.  Prior to the cessation 
 in visitation, the wife had brought two actions for modification of visitation 
 and restraining orders due to the father and his familys conduct.  The family 
 court denied the fathers action to have the mother held in contempt for refusing 
 visitation.  In affirming the family court, this court found the family court 
 did not abuse its discretion in concluding that the problems were caused by 
 the father and that the mother had taken all reasonable steps to resolve the 
 problems.  Id. at 534, 381 S.E.2d at 916.
We find Nash clearly distinguishable from 
 the present case.  Here, the mother waited until the day the father was to start 
 an extended visitation, which she knew included a vacation to the Bahamas, before 
 dropping the letter off to the father informing him that he would not have his 
 visitation with his daughters.  Furthermore, unlike in Nash, there is 
 no evidence of wrongful conduct by the father causing ill effects on the older 
 daughter.  According to Dr. Kollar, the older daughter was experiencing distress 
 thinking about going to her fathers for visitation.  He stated that she related 
 feeling powerless because she has little to say in what she and her sister do 
 during visitation.  She also told him that she was distressed because her father 
 does not allow her to go to the barn where the girls take riding lessons and 
 she was afraid he would not allow her to participate in upcoming horse shows.  
 Dr. Kollar did not advise that the father not be allowed to visit with his daughters.  
 Rather, Dr. Kollar stated that the mother should not have to physically force 
 the daughters to go to their father.  He explained that it was up to the father 
 to work out these issues with the children in family therapy.  
We note the mothers interference with the fathers 
 visitation was not unexpected.  In the divorce decree, the family court stated 
 that it shared the fathers concern that the mother had attempted to alienate 
 the childrens affections from him in order to receive custody.  The court found:

The Wife is a very bright and well-organized woman who can 
 be very indiscreet when she sets her mind on achieving a desired result.  She 
 will do almost anything to get what she wants.  There is also an indication 
 that the Wife has tried to interfere with the Husbands visitation with his 
 daughters.  This Court is concerned that if the Wife is awarded custody, the 
 Husbands relationship with his daughters and their relationship with him will 
 suffer, especially if the Husband were to remarry.  

Despite these expressed reservations, the family 
 court awarded the mother custody, but granted the father more than standard 
 visitation to aid him in fostering a closer relationship with his daughters.  

We hold the family court did not abuse its discretion 
 in determining the mother had willfully withheld visitation from the father.  
 As the family court found, the mother had failed to introduce evidence to support 
 the allegation that the older child suffered harm as a result of visitation 
 with the father, and further found that she had offered no credible evidence 
 as to why she had denied visitation of the youngest child.  Moreover, as the 
 family court noted, the mother did not call the situation to the attention of 
 the court before taking action.  Instead, she acted unilaterally and in knowing 
 violation of the court order.  Accordingly, we find the family court did not 
 err in holding the mother in willful contempt.  
II. Procedural Due Process Violation
The mother argues that she was denied procedural 
 due process in that she was never personally served with the Rule to Show Cause, 
 and that the hearing was held less than 24 hours after she received notice of 
 the hearing.  As the mother admits in her reply brief, she did not contest the 
 personal jurisdiction of the family court and did not make a formal motion for 
 a continuance.  While the mother did request and obtain a ruling as to whether 
 the affidavit of Dr. Kollar would be admitted into evidence in part on the grounds 
 that Dr. Kollar himself was unavailable on such short notice, the mother did 
 not object to the fairness of the hearing itself on due process grounds.  Accordingly, 
 we find the mothers argument is not preserved.  See Bakala v. Bakala, 
 352 S.C. 612, 625, 576 S.E.2d 156, 163 (2003) (A due process claim raised for 
 the first time on appeal is not preserved.).
III. Excessive Fees, Costs, and Fines
The mothers final argument is that the fees, costs, 
 and fines imposed by the family court were excessive.  
The mother challenges the family courts imposition 
 of a fine payable to the court contending the imposition of a criminal sanction 
 was inappropriate and excessive in a civil contempt proceeding.  There is no 
 indication in the record that the mother raised this issue to the family court 
 at the hearing or in a post-trial motion.  Accordingly, it is not preserved.  
 Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It 
 is axiomatic that an issue cannot be raised for the first time on appeal, but 
 must have been raised to and ruled upon by the trial judge to be preserved for 
 appellate review.); Pelican Bldg. Ctrs. v. Dutton, 311 S.C. 56, 60, 
 427 S.E.2d 673, 675 (1993) (stating that although the appellant learned for 
 the first time upon receiving the order on a post-trial motion that the respondent 
 would be granted certain additional relief, the appellant must move under Rule 
 59(e), SCRCP, to alter or amend the judgment to preserve the record for appeal).
The mother next contends the family courts award of 
 costs and attorneys fees to the father was not supported by the record. This 
 issue is not properly before this court because the wife failed to present this 
 issue in her statement of the issues on appeal.  See Rule 208(b)(1)(B), 
 SCACR (Ordinarily, no point will be considered which is not set forth in the 
 statement of the issues on appeal.).    
Furthermore, the mother failed to raise several of 
 the points contained in this section of her brief to the family court.  The 
 mother complains on appeal that the father was not entitled to reimbursement 
 for the veterinary help he had hired because it was an expense he would have 
 incurred even if visitation had begun as scheduled.  The mother never argued 
 to the family court that the father was not entitled to this expense.  Accordingly, 
 it is not preserved.  See Wilder Corp., 330 S.C. at 76, 497 S.E.2d 
 at 733.
Similarly, the mother never argued to the family court 
 that the father was not entitled to all of his attorneys fees, nor did she 
 object to the admission of the fathers affidavit of attorneys fees.  Thus, 
 this issue is not preserved.  See Id. at 76, 497 S.E.2d at 733.  
 Moreover, we find no error in the family courts award of attorneys fees to 
 the father.  A contemnor may be required to reimburse a complainant for the 
 costs he or she incurred in enforcing the courts prior order, including reasonable 
 attorneys fees.  Poston v. Poston, 331 S.C. 106, 114, 502 S.E.2d 86, 
 90 (1998).  It is well settled that an award of attorney fees is within the 
 sound discretion of the trial judge and will not be disturbed absent an abuse 
 of that discretion.  Smith v. Smith, 308 S.C. 492, 496, 419 S.E.2d 232, 
 234-35 (Ct. App. 1992).    
Finally, the mother argues the family court erred in 
 awarding the father $2,039.00 for having to change his airline tickets to the 
 Bahamas.  She asserts there is no indication that the tickets were non-refundable.  
 The father explained that he was not able to change the tickets because he did 
 not know when he was going to get the children and be able to leave for the 
 Bahamas.  The father presented into evidence the airline tickets and his testimony 
 of the expenses he had incurred due to the change of departure date.  
Compensatory contempt is a money award for the 
 plaintiff when the defendant has injured the plaintiff by violating a previous 
 court order.  Curlee v. Howle, 277 S.C. 377, 386, 287 S.E.2d 915, 919 
 (1982).  The goal of compensatory contempt awards is to restore the plaintiff 
 as nearly as possible to his or her original position.  Id.  We hold 
 the family court judge did not err in finding that these expenses were reasonable 
 and necessary to restore the father to his original position.  
CONCLUSION
Based on the above reasons, we hold the order of 
 the family court is
AFFIRMED. 
HEARN, C.J., and HUFF and KITTREDGE, JJ., concur.  

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 [2] According to Dr. Kollar, trichotillomania is a 
 self-destructive behavior involving the recurrent pulling of ones hair as 
 a means of relief from anxiety.